IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYLER DEAN ANDERSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 15-1301 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 29th day of March, 2017, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris,

642 F.2d 700, 705 (3d Cir. 1981)). See also Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).[1]

---

[1] Plaintiff's raises numerous arguments that the Administrative Law Judge ("ALJ") erred in finding him to be not disabled under the Social Security Act, none of which warrant remand of this matter. Instead, the Court finds that substantial evidence supports the ALJ's decision.

Plaintiff first suggests that he was given something less than a full and fair hearing before the ALJ. This seems to be based on a few instances in the record where the ALJ tried to move the hearing along. (R. 82-89). However, in context, the ALJ's statements were no more than part of her effort to expedite the process and were in no way meant to limit the evidence Plaintiff could produce. Indeed, the ALJ expressly gave Plaintiff the option of scheduling a supplemental hearing if he believed that he needed more time to present all of his evidence. (R. 82). Moreover, Plaintiff in no way suggests what evidence, if any, he was precluded from entering into the record or how anything in the record demonstrates bias or animus on the part of the ALJ. These facts fall far short of a situation in which a claimant has been deprived of a fair hearing. See Bordes v. Comm'r of Soc. Sec., 235 Fed. Appx. 853, 857-58 (3d Cir. 2007).

Plaintiff next argues that remand is warranted because the ALJ failed to analyze thoroughly the listings contained in Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations pertaining to the musculoskeletal system, respiratory system, cardiovascular system, endocrine disorders, and malignant neoplastic diseases, and, further, that her analysis of his mental impairments pursuant to Listings 12.04 and 12.06 was insufficient. The Court disagrees. The ALJ asked counsel at the hearing whether Plaintiff was claiming to meet any listing, and counsel responded that he was not. (R. 52-53). Indeed, even now Plaintiff does not actually argue that he meets any of the listings, merely that the ALJ's discussion was not adequate pursuant to the standard set forth in Burnett v. Comm'r of Soc. Sec., 220 F.3d 112 (3d Cir. 2000). In essence, he is arguing that the ALJ was required to provide a detailed analysis of about half of all the listings even though he himself has never alleged that he meets one. As the Third Circuit Court of Appeals has explained, Burnett does not require an ALJ to employ any specific language or format in discussing the listings at Step Three of the sequential process, but rather requires that ALJ "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). In determining whether the ALJ has done so, the Court is to look at the decision as a whole to see whether it illustrates that the ALJ considered the proper factors in reaching his or her conclusion. See id. Here, the ALJ discussed the medical evidence at great length, and merely clarified at Step Three that it did not meet the listings most likely at issue. Considering this extensive discussion, and the fact that Plaintiff himself does not contend that the ALJ ignored any specific evidence that would demonstrate that he met a listing, the Court finds that substantial evidence supports the ALJ's finding. See Lopez v. Comm'r of Soc. Sec., 270 Fed. Appx. 119, 121-22 (3d Cir. 2008).

Plaintiff's arguments about the weight given to aspects of the opinion of Dr. Paul Means, D.O., one of his treating physicians, are somewhat intertwined, but lack merit in any regard. For

2

instance, Plaintiff argues that the ALJ erred in not giving controlling weight to Dr. Means' opinion that he would miss three or more days of work per month as a result of his impairments. (R. 451). It is true that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)(internal citations omitted in part). Here, the ALJ included in her decision a substantial discussion as to why she weighed Dr. Means' opinion as she did and as to how she formulated Plaintiff's residual functional capacity ("RFC").

As Plaintiff acknowledges, the ALJ actually afforded "significant" weight to Dr. Means' opinion, with the exception as to his opinion regarding work absences. (R. 36). Regarding Dr. Means' opinion that Plaintiff would miss three or more days of work per month, the ALJ discussed at significant length how such an opinion was inconsistent with the medical evidence, including Dr. Means' own clinical findings. She further explained that such an opinion was inconsistent with the rest of Dr. Means' assessment of mild to moderate limitations. (Id.). Indeed, Dr. Means did not in any way explain the medical basis for finding that Plaintiff would be absent from work for that specific amount of time, nor is there other medical evidence in the record supporting such a finding. As such, the ALJ was justified in giving less weight to this aspect of Dr. Means' opinion.

Plaintiff further argues that the ALJ erred in not specifically addressing the Global Assessment of Functioning ("GAF") score of 50 assessed to him by Dr. Means. Although the

3

ALJ did not specifically discuss this score, under the facts of this case, the Court disagrees that express discussion of the score was necessary.

GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009). For instance, a GAF score between 41 and 50 reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000)(emphasis added). Accordingly, the mere fact that a treating mental health care provider assigned a certain GAF score would not necessarily indicate that Plaintiff is disabled. Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the vocational expert ("VE"). See Irizarry v. Barnhart, 233 Fed. Appx. 189 (3d Cir. 2007).

Of course, an ALJ need not discuss every piece of evidence in the record, see Fargnoli, 247 F.3d at 42, and GAF scores are not afforded any unique status in that they must expressly be discussed and analyzed in all cases. The Court must look at the overall context. For example, in Gilroy v. Astrue, 351 Fed. Appx. 714 (3d Cir. 2009), the Third Circuit Court held that remand was not required where the ALJ did not reference a GAF score of 45 assigned by the treating psychiatrist where the ALJ did refer to observations from the psychiatrist's reports and where the psychiatrist did not explain the basis for the GAF score.

In this case, as in Gilroy, the ALJ did discuss Dr. Means' findings at great length. As discussed above, she actually afforded significant weight to Dr. Means' opinion except for his opinion as to work absences. She therefore agreed with the limitations Dr. Means associated with that score for the most part. In regard to work absences, nothing suggests that the score itself sheds any additional light on how much time Plaintiff would miss from work. This is not, therefore, a case where the ALJ ignored a GAF score offered by a treating physician or psychologist in the course of rejecting limitations offered by that professional. Rather, the ALJ

4

largely accepted Dr. Means' findings, including the GAF score. While a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. See Howard, 276 F.3d at 241 ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). It is the limitations faced by a claimant, and not an ambiguous GAF score, that must be included in the RFC and hypothetical. The RFC and hypothetical question in this case contained numerous limitations based on Plaintiff's mental health impairments. (R. 29).

The closest Plaintiff comes to alleging a specific deficiency in his RFC caused by the ALJ's alleged disregard of his GAF score of 50 is in claiming that a limitation to simple, routine, repetitive tasks does not adequately address such a score. That does not matter here, though, because the RFC contained far more specific limitations as to Plaintiff's mental functional capacity. Again, for the most part, the ALJ actually adopted Dr. Means' opinion as to functional limitations.

Under these circumstances, there was no particular need to discuss the GAF score itself. The ALJ did not reject the score, or any of the medical evidence in this case, but rather used the evidence to formulate the RFC and hypothetical to the VE. Plaintiff has not demonstrated how any of the limitations contained in the RFC are contradicted by his GAF score of 50. Moreover, since a GAF score does not directly correlate to a finding of disability, and since a GAF score can mean many things, there would be no basis for including the score itself in the RFC. Simply put, nothing in the RFC determined by the ALJ suggests that she rejected the score. See Rios v. Commissioner of Soc. Sec., 444 Fed. Appx. 532, 535 (3d Cir. 2011) (remand not warranted where ALJ was not cherry-picking or ignoring medical assessments that ran counter to her finding).

Plaintiff raises a couple of other concerns regarding the ALJ's RFC finding. First, he asserts that the ALJ's finding that he could perform no more than frequent fingering was in error because she did not properly consider or explain the effects of Plaintiff's documented hand problems. However, while the record does demonstrate complaints about hand and/or upper extremity pain in 2013 and 2014, it was always in the context of a broader complaint about chronic pain. (R. 395, 402, 406, 410). Moreover, none of the records indicate what, if any, functional limitations result from Plaintiff's hand pain. In fact, fingering or fine manipulation are never offered as exacerbating factors or as demonstrated functional limitations. (Id.). Further, at each appointment where Plaintiff's hand pain was discussed, he was found to have normal 5/5 muscle strength, and bulk and tone were normal. (R. 396, 403, 407, 411). Indeed, the evidence arguably supports the ALJ's statement that the record "do[es] not support functional difficulties fingering" at all. In any event, the record clearly supports her decision to give Plaintiff "the utmost benefit of the doubt" in including a restriction to frequent fingering. (R. 36). "Frequent" in the context of a Step Five determination generally means occurring between one third and two thirds of the day, see S.S.R. 83-10, 1983 WL 31251, at *6 (1983), and there is substantial evidence, as discussed above, for such a finding.

5

Plaintiff also argues that the ALJ failed to give full and proper consideration to his obesity in formulating the RFC. Not only does Plaintiff fail to explain how his obesity actually does impact his RFC beyond the limitations already included therein, his claim that the ALJ did no more than simply state that she took Plaintiff's obesity into account is simply wrong. Plaintiff may have missed the lengthy analysis regarding the impact of his obesity on the RFC in the ALJ's decision (R. 35-36), but this Court did not.

The next in Plaintiff's long string of arguments is that the representative jobs which the VE found him able to perform were incompatible with his mental functional capacity because at least one of them requires a "reasoning level" of 3 under the Dictionary of Occupational Titles ("DOT"). "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." McHerrin v. Astrue, Civ. No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Among other qualifications, jobs are assigned a General Educational Development level, which includes a reasoning level from 1 to 6. Jobs with a reasoning level of 3 require that an employee "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, § III. Here, after considering Plaintiff's fingering limitations, the VE testified to two examples of jobs that Plaintiff could perform – addresser clerk, identified as DOT 209.587-010, and document preparation clerk, DOT 249.587-018. (R. 95, 98). While the former has a reasoning level of 2, the latter has a reasoning level of 3. Plaintiff does not dispute that a reasoning level of 2 is consistent with his RFC, but contends that a reasoning level of 3 is incompatible with his limitation to simple, routine, repetitive work. However, the Third Circuit has expressly declined to find that there is a per se conflict between a reasoning level of 3 and a limitation to simple, routine tasks and unskilled work. See Zirnsak v. Colvin, 777 F.3d 607, 618 (3d Cir. 2014). Instead, the Circuit Court explained that remand is not necessary in such cases where the ALJ discharged his or her duty to ask the VE whether his or her testimony was consistent with the DOT on the record and where the following factors were met: (1) the claimant did not seriously argue an inability to perform the jobs in question and the record supports a finding that he or she can perform such work; (2) the claimant did not point out the conflict at the hearing; and (3) the challenged jobs were only representative examples. See id. at 618-619.

The situation here is much the same as in Zirnsak. First, the ALJ did, in fact, ask the VE if his testimony was consistent with the DOT, and the VE responded that it was. (R. 97). Further, here, as in Zirnsak, Plaintiff has made no real argument that he could not perform the work of a document preparation clerk, and, as discussed herein, the ALJ discussed the medical evidence and its impact on Plaintiff's functional limitations at great length. Moreover, Plaintiff did not raise any inconsistencies at the hearing. Finally, the jobs offered by the VE were expressly offered as "examples." (R. 96). Accordingly, there is no basis for remanding the case based on this argument. See also Brush v. Colvin, Civ. No. 3:14-cv-2143, 2015 WL 3866078 (M.D. Pa. June 23, 2015). The Court further notes that, as discussed, one of the jobs mentioned does, in fact, have a reasoning level of 2, which Plaintiff does not challenge. While the Commissioner does bear the burden of demonstrating that the claimant can perform jobs existing in the national economy at the fifth step of the sequential analysis, see Zirnsak, 777 F.3d at 616,

6

this burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. See Wilkinson v. Comm'r of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. § 404.1566(b)). Accordingly, the addresser clerk position alone would satisfy the Commissioner's burden at Step Five.

Finally, Plaintiff invites the Court to consider the medical source statement from Scott Tracy, M.D., that he submitted to the Appeals Council (R. 499-510), which he argues amplifies the seriousness of his conditions. He also asks alternatively for the case to be remanded for this evidence and other new evidence to be considered. The Court finds neither of these options to be warranted.

It is well-established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001); Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 360 (3d Cir. 2011). Accordingly, the Court cannot rely on Dr. Tracy's opinion or any of the other additional records not submitted to the ALJ in making its determination here. As discussed herein, based on the record before the ALJ at the time she issued her decision, substantial evidence supported her finding that Plaintiff was not disabled.

However, a district court can remand a case on the basis of new evidence under sentence six of 42 U.S.C. § 405(g). Section 405(g) provides, in relevant part:

> [The court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.

Therefore, to remand a case based on new evidence which has not been presented to the ALJ, the Court must determine that the following criteria have been met: First, the evidence must be new and not merely cumulative of what is in the record. Second, the evidence must be material. This means that it must be relevant and probative, and there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. Third, the plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record. See Matthews, 239 F.3d at 594; Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff cannot meet this burden.

Because Dr. Tracy's opinion and the other records at issue were not included in the record before the ALJ, the Court will assume that these records are new and not merely cumulative of what is in the record. However, many of these exhibits are from after the date the ALJ issued her decision and are therefore not material, since they do not relate to the relevant time period. See Szubak, 745 F.2d at 833 ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern

7

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and Defendant's Motion for Summary Judgment (document No. 13) is GRANTED.

                                                    s/Alan N. Bloch
                                                    United States District Judge

ecf:         Counsel of record

---

evidence of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition."); Rainey v. Astrue, Civ. No. 11-125-E, 2012 WL 3779167, at *8 (W.D. Pa. Aug. 31, 2012); Harkins v. Astrue, Civ. No. 10-174, 2011 WL 778403, at *1 n.1 (W.D. Pa. Mar. 1, 2011). Dr. Tracy's opinion is dated June 10, 2014, approximately six weeks after the ALJ's decision was issued, and he indicates in his opinion that he had been seeing Plaintiff for five weeks. Therefore, this provider did not provide care at all during the relevant time period, nor is there anything in his opinion to suggest that it was meant to relate back to that period. The May 6, 2014 office notes from Dr. Means (R. 514-18) also post-date the ALJ's decision, albeit only by about a week. However, considering that the record already contains Dr. Means' opinion as to Plaintiff's functional limitations, as well as numerous treatment records from Dr. Means from the relevant time period. it does not appear that there is a reasonable possibility that these additional few notes would have changed the outcome of the determination here. Indeed, Dr. Means himself does not state that these records would change his opinion (largely adopted by the ALJ) in any way. The May 2015 records from Dr. Shahid M. Malik, M.D., attached to Plaintiff's brief are from well after the relevant time period. To the extent these documents are relevant to a showing that Plaintiff's condition has deteriorated since the ALJ's decision, he certainly could rely on the evidence in support of a new application for benefits.

      As to the one exhibit that is from the relevant time period, a liver biopsy report (R. 512-13), it likewise does not appear that there is a reasonable possibility that this information would have changed the outcome of the determination here. First, the results merely confirm the hepatic sarcoidosis and cirrhosis suspected by Dr. Douglas Klions, M.D., and Dr. Means (R. 34-35), which the ALJ already considered in formulating the RFC. Further, Dr Klions indicated the Plaintiff's treatment would not change much based on such a diagnosis. (R. 34). Simply put, nothing in this record suggest any additional functional limitations not already accounted for by the ALJ.

      Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.